UNITED STATES COURT OF INTERNATIONAL TRADE

―――――――――――――――――――――――――――x
: 
PRADA S.P.A.,                                        :
:
:
             Plaintiff,           :    Court No. 26-00953
:
:
    v.                             :
:
UNITED STATES, U.S. CUSTOMS AND     :
BORDER PROTECTION, and RODNEY S.    :
SCOTT, in his official capacity as Commissioner   :
of U.S. Customs and Border Protection,   :
:
             Defendants.          :
―――――――――――――――――――――――――――x

## COMPLAINT

Plaintiff, Prada S.p.A., by its undersigned attorneys, alleges the following:

1. Plaintiff is an importer and challenges the assessment of certain duties upon its imported merchandise.

2. Beginning in February 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports.

3. Plaintiff is the importer of record of merchandise subject to the IEEPA Duties and paid the IEEPA Duties on its imported goods.

4. IEEPA does not authorize these tariffs. This Court and the U.S. Court of Appeals for the Federal Circuit have already so held. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025) ("V.O.S.

1

Selections").

5. Through this action, Plaintiff asks the Court to hold that, with respect to goods imported by Plaintiff, the IEEPA Duties collected by Defendants, and the underlying executive orders that directed them, are unlawful.

6. The Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District Court for the District of Columbia[1] on November 5, 2025, and is expected to decide those cases in the near future.

7. This separate action is necessary because, even if the IEEPA Duties and underlying executive orders are held unlawful by the Supreme Court, importers, including Plaintiff, that have paid IEEPA duties are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment from this Court.

8. This action is necessary at this time because it is uncertain whether Defendants will issue refunds on liquidated entries even if the Supreme Court affirms the holding of the Federal Circuit in *V.O.S. Selections*. Plaintiff seeks relief from the impending liquidations to ensure that its right to a complete refund is not jeopardized.

9. Accordingly, for itself, Plaintiff seeks (i) a declaration that the IEEPA Duties are unlawful; (ii) a full refund, with interest as required by law, from Defendants of all IEEPA Duties Plaintiff has already paid to the United States, as well as those it will continue to pay.

## PARTIES

10. Plaintiff is an importer of various goods on which IEEPA Duties were paid.

11. Defendant United States received the disputed IEEPA Duties and is the statutory

---

[1] *Learning Resources., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025) ("*Learning Resources*").

defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

12. Defendant United States Customs and Border Protection ("CBP") is the United States agency that collects duties on imports. CBP collected payments made by Plaintiff of the IEEPA Duties.

13. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

14. Defendants are referred to collectively in this complaint as the ("Defendants").

## JURISDICTION AND STANDING

15. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See V.O.S. Selections,* 149 F.4th at 1334. The Court has the same powers at law and in equity as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

16. Plaintiff has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of the APA. 5 U.S.C. § 702; 28 U.S.C. § 2631(i). IEEPA Duties imposed by Defendants adversely affected and aggrieved Plaintiff because, as importer of record, it was required to pay and did pay these unlawful duties.

17. Declaratory and injunctive relief from this Court would redress those injuries. Plaintiff also faces imminent and irreparable harm due to uncertainty as to whether Defendants will issue refunds of the IEEPA Duties as to liquidated entries.

18. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). On February 1, 2025,

President Trump issued Executive Orders that resulted in the collection of IEEPA Duties. These Orders were published in the Federal Register shortly thereafter. The instant action is filed within two years of the date that these Orders were issued and published, and also within two years in which Plaintiff first paid these IEEPA Duties.

## GENERAL PLEADINGS

**I.     The IEEPA Tariff Orders**

19.    On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China.[2] Each executive order was premised on IEEPA authorizing the tariffs. Collectively, these are referred to in this Complaint as the "Trafficking Tariff Orders." Pursuant to these Orders, CBP assessed additional IEEPA duty upon Plaintiff's entries.

20.    President Trump subsequently modified the China Trafficking Tariff Order.[3]

21.    On April 2, 2025, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[4] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United

---

[2] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[3] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[4] Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*.

22.     President Trump subsequently modified the Reciprocal Tariff Order.[5]

23.     In implementing the Executive-Order-based tariff regime, the Defendant directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs to be entered under new tariff codes.

24.     On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

25.     In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, has issued additional executive orders imposing additional tariffs and modifying others. As explained below, IEEPA does not authorize the President to impose tariffs. By this complaint, Plaintiff challenges those orders (the "IEEPA Tariff Orders") that affect the duty rates on goods imported from the countries with which Plaintiff does business and for which Plaintiff pays duties (thus causing Plaintiff injury), and which the Federal Circuit has already held to be unlawful.

**II.     CBP's Implementation of the IEEPA Tariff Orders**

26.     CBP is charged with the assessment and collection of duties. 19 U.S.C. §§ 1500, 1502.

---

[5] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment (Apr. 9, 2025), 90 Fed. Reg. 15,625 (Apr. 15, 2025).

27. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs, including the IEEPA Duties, on the imported goods based upon the tariff classification of the goods, according to the rates established by the Harmonized Tariff Schedule of the United States ("HTSUS"). 19 U.S.C. §§ 1202, 1500, 1502.

28. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether the importer owes more money or is entitled to a refund. 19 U.S.C. § 1500.

29. Once liquidation has occurred, and if the liquidation is protestable, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and any other CBP decisions encompassed therein. 19 U.S.C. § 1514(a).

30. This Court and the Federal Circuit have cautioned that in certain circumstances an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66 (Ct. Int'l Trade 2021).; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

31. This Court possesses the equitable authority to suspend liquidation. *See*, *e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66.

**III.     Three Courts Have Held that IEEPA Does Not Authorize Assessment of Duties.**

32. The IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

33. None of these statutes authorizes the President to impose tariffs. Of these, Defendants have relied solely on the IEEPA statute to impose and collect the IEEPA Duties.

34. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections,* holding that IEEPA did not authorize assessment of IEEPA Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case.

35. Upon appeal, the Federal Circuit stayed this Court's decision.

36. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections*.

37. In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Re*sources. That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*.

38. The cases were consolidated, with argument before the Supreme Court on November 5, 2025.

**IV.     Plaintiff Paid Preliminary IEEPA Duties**

39. Plaintiff's imports subject to IEEPA Duties entered the United States under new HTSUS codes.

40. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed by the IEEPA Tariff Orders.

## STATEMENT OF CLAIMS

### COUNT I

### THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER V.O.S. SELECTIONS

41. Plaintiff incorporates paragraphs 1- 40 above by reference.

42. The Court of International Trade in *V.O.S. Selection* held that the President exceeded his authority under IEEPA when he imposed tariffs on imported goods.

43. The *V.O.S. Selections* Court held that: (a) IEEPA authorizes the President only to "investigate, regulate, or prohibit" importation; (b) IEEPA does not authorize the imposition of tariffs on imports; and (c) neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

44. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA. The Federal Circuit further stated that construing IEEPA to permit such authority would raise grave constitutional concerns, including concerns under the major questions and non-delegation doctrines.

45. The executive orders challenged in this Complaint are materially identical in structure, authority claimed, and effect to those struck down in *V.O.S. Selections.* They purport to impose duties and to modify the HTSUS solely under IEEPA. For the same reasons set forth *in V.O.S. Selections*, the IEEPA Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

46. Plaintiff respectfully requests that this Court apply the binding decision of the Federal Circuit, declare the IEEPA Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order refund of all IEEPA Duties collected from Plaintiff, with interest as provided by law.

## COUNT II

### ALTERNATIVE – THE CHALLENGED ORDERS ARE UNLAWFUL UNDER THE REASONING OF THE DISTRICT COURT IN *LEARNING RESOURCES*

47.     Plaintiff incorporates paragraphs 1 - 46 above by reference.

48.     In the alternative, if the Court were to construe IEEPA as authorizing tariffs, the IEEPA Tariff Orders must nevertheless be held unlawful because such a reading would convert IEEPA into an impermissible delegation of legislative power.

49.     The District Court in *Learning Resources* held that interpreting IEEPA to permit the President to impose broad import tariffs would violate Article I, § 1 and § 8 of the U.S. Constitution, which vest in Congress the power to "lay and collect … Duties".  The court further reasoned that under the major questions doctrine, Congress must speak clearly when assigning to the Executive branch decisions of vast economic and political significance—such as the power to impose sweeping tariffs that affect international trade—and IEEPA contains no such clear statement.

50.     Accordingly, even assuming IEEPA could be construed to permit the Tariff Orders, that delegation would lack an intelligible principle and would therefore be unconstitutional. On that basis, the IEEPA Tariff Orders are unlawful.

51.     Plaintiff therefore seeks a declaration that the IEEPA Tariff Orders are unlawful under the reasoning of *Learning Resources* as to Plaintiff, enjoining Defendants from enforcing them as to Plaintiff, and ordering refunds of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT III

### (DECLARATORY RELIEF, 28 U.S.C. § 2201)

52. Plaintiff incorporates paragraphs 1- 51 above by reference.

53. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

54. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of Defendants to implement and collect the resulting tariffs.

55. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA Duties as a result of the IEEPA Tariff Orders on goods it has imported into the United States.

56. This Court should exercise its equitable power to enter a declaratory judgment that the IEEPA Tariff Orders are unlawful for any or all of the above reasons, and that Defendants lack authority to implement and collect the resulting tariffs, as to Plaintiff.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

    a) declare that the President lacks authority under IEEPA to set tariffs;

    b) declare that the IEEPA Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

    c) declare that, with respect to Plaintiff, Defendants lack authority to implement and collect any tariffs set out in the HTSUS that are based on the IEEPA Tariff Orders;

    d) with respect to Plaintiff, enjoin Defendants from imposing and enforcing

        any tariffs set out in the HTSUS that are based on the IEEPA Tariff Orders;

e)    Order the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest as provided by law; and

f)    award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action;

g)    grant such further relief as this Court deems proper.

Respectfully submitted,

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
Joseph M. Spraragen*
Andrew T. Schutz**
Ned H. Marshak*
Jordan C. Kahn**

GRUNFELD, DESIDERIO, LEBOWITZ SILVERMAN & KLESTADT LLP

707 Wilshire Boulevard
Suite 4150
Los Angeles, CA 90017-3720
(213) 452-0863
esmithweiss@gdlsk.com

*599 Lexington Ave., 36th Floor
New York, NY 10022
(212) 557-4000

**1201 New York Ave., NW, Ste. 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiff*

Dated: February 6, 2026